# Supreme Court of Florida

_____

No. SC13-819
_____

**RODERICK MICHAEL ORME,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC14-22
_____

**RODERICK MICHAEL ORME,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[December 10, 2015]

PER CURIAM.

Roderick Michael Orme appeals an order of the circuit court denying his

motion to vacate his sentence of death, filed under Florida Rule of Criminal

Procedure 3.851, and he petitions this Court for a writ of habeas corpus. We have

jurisdiction.  See art. V, § 3(b)(1), (9), Fla. Const.  For the reasons that follow, we affirm the postconviction court's denial of relief, and we deny habeas relief.

## FACTS AND PROCEDURAL HISTORY

A full description of the facts of the instant case can be found in our opinion from Orme's direct appeal.  Orme v. State (Orme I), 677 So. 2d 258, 260-61 (Fla. 1996).  The facts relevant here are as follows.  In March 1992, Orme was charged with premeditated or felony murder, robbery, and sexual battery in connection with the death of Lisa Redd, whose body was found in Orme's motel room.  Id. at 260.  A jury convicted Orme on all three counts and recommended the death penalty by a vote of seven to five.  Id. at 261.  The trial judge followed the recommendation and sentenced Orme to death, finding three aggravating factors—committed during the course of a sexual battery; heinous, atrocious, or cruel (HAC); and committed for pecuniary gain.  Id.  In mitigation, the judge found both statutory mental health mitigators (substantial impairment and extreme emotional disturbance), giving them "some weight."  Id.  We have previously described the procedural history of this case as follows:

> On direct appeal, Orme raised eight issues. [n.1]  This Court affirmed Orme's conviction of first-degree murder and the sentence of death. [Orme I, 677 So. 2d at 261-64.]  Orme filed a petition for writ of certiorari with the United States Supreme Court.  That Court denied review on January 13, 1997.  Orme v. Florida, 519 U.S. 1079 (1997).
>
> > [N.1]  The following issues were raised: (1) the trial court should have directed a judgment of acquittal on grounds

- 2 -

the case against him was circumstantial and the State had failed to disprove all reasonable hypotheses of innocence; (2) Orme's statements to officers should have been suppressed on grounds he was too intoxicated with drugs to knowingly and voluntarily waive his right to silence; (3) death is not a proportionate penalty because Orme's will was overborne by drug abuse, and because any fight between the victim and him was a "lover's quarrel"; (4) Orme's mental state at the time of the murder was such that he could not form a "design" to inflict a high degree of suffering on the victim; (5) the trial court erred by failing to weigh in mitigation the fact that Orme had no significant prior criminal history; (6) the trial court erred in declining to give a special instruction that acts perpetrated on the victim after her death are not relevant to the HAC aggravator; (7) the instruction on HAC violated the dictates of Espinosa v. Florida, 505 U.S. 1079 (1992); and (8) Orme was incapable of forming the specific intent necessary for first-degree murder and this fact bars his death sentence under Enmund v. Florida, 458 U.S. 782 (1982).

Subsequently, Orme filed an amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851, raising twenty-five claims. After an evidentiary hearing on four claims of ineffective assistance of trial counsel, the trial court denied relief. Orme appealed the denial of postconviction relief to this Court, raising three claims. [n.2] He also petitioned the Court for a writ of habeas corpus, raising eight claims. [n.3] See [Orme v. State (Orme II), 896 So. 2d 725, 737 (Fla. 2005)]. This Court found defense counsel ineffective for failing to further investigate Orme's diagnosis of bipolar disorder with respect to the penalty phase. As a result, a new penalty phase was ordered. Id. [at 740-41].

[N.2] Orme argued that (1) the trial court erred in denying his ineffective assistance of counsel claim for trial counsel's failure to present evidence of Orme's diagnosis of bipolar disorder; (2) his death sentence is unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584 (2002), and its progeny; and (3) the general jury

- 3 -

qualifications procedure in Bay County, where he was tried, was unconstitutional. [Orme II], 896 So. 2d 725 (Fla. 2005).

[N.3] Three of the claims Orme raised were: (1) appellate counsel was ineffective for failing to raise on appeal the fact that Orme was involuntarily absent from two bench conferences, which he claims were critical stages of his trial; (2) appellate counsel was ineffective for failing to raise on appeal the claim that the prosecutor engaged in misconduct rendering the conviction and sentence fundamentally unfair; and (3) appellate counsel was ineffective for failing to raise on appeal the claim that the trial court erroneously allowed forty-three gruesome photographs to be shown to the jury. Orme raised five additional claims, all of which were found not to be properly raised in a habeas proceeding because they were either raised on direct appeal or in postconviction or should have been raised and were therefore procedurally barred. [Orme II, 896 So. 2d at 740].

In May 2007, a new penalty phase was conducted before a new jury, but before the original trial judge. By a vote of eleven to one, the new jury recommended a death sentence. The trial court followed the jury's recommendation and sentenced Orme to death. The trial court found the following three statutory aggravating factors: (1) the capital felony was committed for pecuniary gain; (2) the capital felony was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit a sexual battery; and (3) the capital felony was especially heinous, atrocious, or cruel. The trial court also found three statutory mitigators: (1) the defendant had no significant criminal history (little weight); (2) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance (little weight); and (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (little weight). The trial court also found that the following mitigation was either irrelevant to the murder or did not exist and, as a result, gave them no weight: (1) the age of the defendant; (2) a bipolar disorder contributed

- 4 -

significantly to the defendant's substance abuse; (3) the defendant had a difficult childhood; (4) the defendant is a model prisoner; (5) the defendant's potential for rehabilitation; and (6) the defendant tried to get the victim help.

Orme v. State (Orme III), 25 So. 3d 536, 542-43 (Fla. 2009).

At resentencing, Orme was initially represented by Russell Ramey, who was appointed after the Public Defender's Office certified to the court a conflict of interest and moved for appointment of separate counsel. Subsequently, attorneys Sarah Butters and George Schulz of Holland & Knight, LLP, filed a notice of appearance as cocounsel to Ramey. However, at a September 7, 2005, hearing, the trial court informed Butters and Schulz that their pro bono representation of Orme as cocounsel to Ramey could prompt Ramey's withdrawal from the case, as the Justice Administrative Commission (JAC) would not pay for court-appointed counsel when private counsel had been obtained. Thus, on November 2, 2005, Butters and Schulz filed a motion for appointment of Michel Stone as cocounsel for Orme.[1] A hearing was held on the motion on November 7, 2005, and the trial court conducted a colloquy with Orme, eventually appointing Stone as cocounsel to Ramey.

---

1. Stone had briefly represented Orme before the start of Orme's original trial proceedings, when Stone left the Public Defender's Office to enter private practice.

Orme appealed the death sentence he received at resentencing to this Court, raising nine claims.[2] Orme III, 25 So. 3d at 540, 543. We affirmed his sentence, finding no reversible error. Id. at 543-53. Orme then filed a petition for writ of certiorari with the United States Supreme Court, which that Court denied on June 7, 2010. Orme v. Florida, 560 U.S. 956 (2010).

On June 1, 2011, Orme filed the instant motion for postconviction relief, presenting four claims of ineffective assistance of counsel—that resentencing phase counsel rendered ineffective assistance by (1) violating the Sixth, Eighth, and Fourteenth Amendments; (2) failing to object to the prosecutor's improper arguments at resentencing; (3) failing to preserve the trial court's error in holding that a juror's refusal to consider remorse as a mitigator could only be a basis for a

---

2. The nine claims were that the trial court erred in (1) refusing to allow Orme to challenge for cause prospective jurors who could not consider remorse as a mitigator; (2) refusing to allow him to inquire of prospective jurors whether they could consider recommending a life sentence as a matter of mercy even if the aggravators outweighed the mitigators; (3) failing to dismiss the venire after one prospective juror revealed that Orme had a prior conviction; (4) refusing to allow Orme to waive his right to the sentencing option of life in prison without the possibility of parole for twenty-five years in favor of a harsher punishment of life in prison without the possibility of parole; (5) failing to give weight to Orme's difficult childhood, the fact that Orme was a model prisoner, Orme's potential for rehabilitation, and Orme's attempt to get the victim help; (6) finding that the pecuniary gain aggravator applied; (7) finding the HAC aggravator; and (8) finding that the "murder was committed in the course of a sexual battery" aggravator applied; along with the ninth claim that Orme's death sentence violated Ring v. Arizona, 536 U.S. 584 (2002). Id. at 543-52.

peremptory challenge; and (4) failing to preserve the issue of the jury's consideration of mercy in making its sentencing recommendation. He also raises two additional claims: that rules prohibiting Orme's lawyers from interviewing jurors to discover constitutional error violate Orme's constitutional rights and that Orme's death sentence violates the Eighth Amendment. The State filed its response on July 26, 2011. The postconviction court granted an evidentiary hearing on Orme's first claim only. The hearing began on April 30, 2012. On March 1, 2013, the court entered an order denying all of Orme's postconviction claims.

Orme now appeals the denial of his motion, raising four claims of ineffective assistance of resentencing phase counsel[3] and one claim of ineffective assistance of postconviction counsel. Orme also petitions this Court for a writ of habeas corpus, alleging that appellate counsel rendered ineffective assistance by failing to raise the following issues on appeal from the resentencing: (1) the use of restraints on Orme during resentencing; (2) the State's participation in privileged discussions and

---

3. These claims are the same as the first four claims presented to the postconviction court in Orme's motion below—that resentencing phase counsel rendered ineffective assistance by (1) violating the Sixth, Eighth, and Fourteenth Amendments; (2) failing to object to the prosecutor's improper arguments at resentencing; (3) failing to preserve the trial court's error in holding that a juror's refusal to consider remorse as a mitigator could only be a basis for a peremptory challenge; and (4) failing to preserve the issue of the jury's consideration of mercy in making its sentencing recommendation.

communications of defense counsel in violation of the Equal Protection Clause; and (3) improper arguments by the prosecutor at resentencing.

## ANALYSIS

First, we summarily reject Orme's claim of ineffective assistance of postconviction counsel because, as Orme recognizes, this Court has repeatedly rejected such claims.[4] We also reject the remainder of Orme's claims for the reasons outlined below.

### I. Ineffective Assistance of Counsel

To prevail on an ineffectiveness claim, a defendant must satisfy both prongs of the Strickland[5] test: that counsel performed deficiently and that such deficiency prejudiced the defendant. Lynch v. State, 2 So. 3d 47, 70 (Fla. 2008). Because both prongs must be demonstrated, once a defendant has failed to meet one prong, a discussion of the other is unnecessary. Strickland, 466 U.S. at 697; see Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986). Furthermore, because the inquiry involves mixed questions of law and fact, we defer to the trial court's factual

---

4. Mann v. State, 112 So. 3d 1158, 1163-64 (Fla. 2013); Gore v. State, 91 So. 3d 769, 778 (Fla. 2012); Kokal v. State, 901 So. 2d 766, 777 (Fla. 2005); Foster v. State, 810 So. 2d 910, 917 (Fla. 2002); King v. State, 808 So. 2d 1237, 1245 (Fla. 2002); Carroll v. State, 815 So. 2d 601, 609 n.8 (Fla. 2002); Waterhouse v. State, 792 So. 2d 1176, 1193 (Fla. 2001).

5. Strickland v. Washington, 466 U.S. 668, 687 (1984).

findings where supported by competent, substantial evidence, but review the court's legal conclusions de novo. Walker v. State, 88 So. 3d 128, 134 (Fla. 2012).

To demonstrate deficient performance, "the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards." Walker, 88 So. 3d at 134 (quoting Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010)). In assessing counsel's performance, judicial scrutiny must be "highly deferential," and counsel is entitled to the strong presumption that his or her conduct "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To establish prejudice, the defendant must show that without his counsel's deficiency, there is a "reasonable probability" that he would have received a different sentence. Simmons v. State, 105 So. 3d 475, 503 (Fla. 2012). In other words, the deficiency must be demonstrated to have "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Walker, 88 So. 3d at 134 (quoting Bolin, 41 So. 3d at 155); see also Strickland, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). To determine reasonable probability, we must

"consider the totality of the available mitigation evidence—both that adduced at trial, and . . . in the [postconviction] proceeding—and reweig[h] it against the evidence in aggravation." Walker, 88 So. 3d at 138 (internal quotation marks omitted).

## A. Violations of the Sixth, Eighth, and Fourteenth Amendments

Orme's first claim can be divided into seven subclaims.[6] However, subclaims two through four are so significantly related to the theory of residual doubt in subclaim one that they will be discussed together below. Subclaims five through seven will be addressed separately.

The first issues of ineffective assistance involve the injection of residual or lingering doubt about the murder and the sexual battery convictions into the resentencing phase by defense counsel. This Court has rejected the use of residual doubt as a mitigator. Darling v. State, 808 So. 2d 145, 162 (Fla. 2002) ("We have repeatedly observed that residual doubt is not an appropriate mitigating circumstance."). "[A] defendant's right to present evidence challenging an

---

6. The first six subclaims are that counsel rendered ineffective assistance by (1) attempting to use lingering doubt to affect the jury; (2) making false promises as to the DNA evidence in the case; (3) presenting inconsistent theories of the case; (4) attempting to convince the jury that Orme had consensual sex with the victim; (5) calling Drs. Harmor and Riddick to testify; and (6) poorly presenting the mental health mitigation evidence. As subclaim seven, Orme argues that the postconviction court erred in not considering the cumulative prejudice resulting from the deficiencies outlined in the first six subclaims.

- 10 -

aggravating circumstance may not be used to relitigate the guilt determination through the introduction of evidence suggesting lingering or residual doubt." Duest v. State, 855 So. 2d 33, 40 (Fla. 2003).  Thus, where the sole purpose for admitting certain evidence is to show residual doubt as to the defendant's guilt, the evidence is inadmissible.  Merck v. State, 124 So. 3d 785, 796 (Fla. 2013).  See, e.g., Duest, 855 So. 2d at 40 (upholding court's exclusion of alibi evidence where it was not relevant to rebut robbery/pecuniary gain aggravator but was merely an attempt to relitigate defendant's failed alibi defense from the guilt phase (citing Way v. State, 760 So. 2d 903, 916 (Fla. 2000); Waterhouse v. State, 596 So. 2d 1008, 1015 (Fla. 1992))).

Here, resentencing counsel's strategy was to rebut the sexual battery aggravator by asserting, based on the unknown third party's DNA found under the victim's fingernail and the fact that Orme did not have any scratches on his person, that Orme had consensual sex with the victim.  Orme argues that such strategy constitutes an impermissible, residual doubt argument and therefore demonstrates deficient performance.  Orme also argues deficiency for resentencing counsel's presentation of inconsistent theories in that counsel highlighted the lack of scratches on Orme's body to imply that Orme was not guilty, but also stated that Orme knew he was the one who killed the victim and that neither the defense nor

Orme was trying to evade responsibility for the victim's death. As to prejudice, Orme argues that this strategy caused the defense to lose credibility with the jury.

Regardless of whether this was a good strategy, it does not rise to the level of ineffective assistance of counsel. Any loss of credibility resulting from a residual doubt argument has not "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined," Walker, 88 So. 3d at 134 (quoting Bolin, 41 So. 3d at 155), especially given the trial court's finding and assigning of great weight to three aggravators, including HAC—which is one of the weightiest in Florida's statutory sentencing scheme[7]—and the "relatively weak"[8] mitigation presented in this case. Because Orme has failed to demonstrate prejudice, we find that he is not entitled to relief as to these subclaims.

Orme also argues that calling Drs. Harmor and Riddick constituted deficient performance because portions of their testimony were favorable to and relied upon by the State in establishing the sexual battery and HAC aggravators. However, both experts provided testimony that supported the defense theory of the case. Dr. Harmor testified about a third person's DNA found at the crime scene. Dr. Riddick testified that the victim could have been beaten after, rather than before or

_____

7. Bradley v. State, 33 So. 3d 664, 680 (Fla. 2010).

8. Orme III, 25 So. 3d at 544, 545.

- 12 -

during sex, and that the sex could have been consensual. Whether or not resentencing counsel received what they desired from the testimony of these two experts, Orme has not shown that he was prejudiced by it. The State produced sufficient evidence for the finding of the HAC and sexual battery aggravators even without the testimony from Drs. Harmor and Riddick. See Orme III, 25 So. 3d at 551-52. Accordingly, Orme cannot establish that any deficiency in calling these experts affected his resentencing in such a way that this Court's confidence in his sentence is undermined. Walker, 88 So. 3d at 134.

Orme also argues that his resentencing counsel rendered ineffective assistance in their presentation of mental health mitigation by failing to: (1) correct the inaccurate testimony of Drs. Maher and Herkov that they were the only two experts, other than Dr. Walker, to diagnose Orme as bipolar; (2) call Dr. McClane as a witness or have Dr. Warriner's[9] prior testimony from Orme's original postconviction proceedings read to the jury; (3) have Dr. Herkov testify as to the statutory mitigators; and (4) present the testimony of Drs. Maher and Herkov in a detailed, cohesive manner, as it was presented at the original postconviction hearing.

_____

9. Dr. Warriner died before resentencing.

Neither Dr. McClane nor Dr. Warriner clearly diagnosed Orme as bipolar. As we noted in Orme II, Dr. McClane testified in Orme's original postconviction proceeding that had he received certain information before trial, he "would have diagnosed Orme as probable bipolar in a depressed phase," and Dr. Warriner indicated that "had he been asked to provide a diagnosis, he would likely have diagnosed Orme with 'bipolar disorder, mixed type.' " 896 So. 2d at 734 (emphasis added). These statements are tentative and hypothetical, not an actual diagnosis. Thus, any attempt by resentencing counsel, on redirect, to correct the testimony that only three doctors diagnosed Orme as bipolar would have been useless or even detrimental since Drs. Maher and Herkov obviously did not consider the statements by Drs. Warriner and McClane to constitute actual diagnoses. Further, Orme received the benefit of their statements when the State's expert, Dr. Pritchard, testified at resentencing that both Dr. Warriner and Dr. McClane had diagnosed Orme with bipolar disorder. Under the circumstances, prejudice has not been established.

Nor has Orme demonstrated deficient performance for not presenting testimony from Drs. McClane and Warriner. Resentencing counsel testified that they tried contacting Dr. McClane, but he refused to cooperate or testify at Orme's resentencing. Orme has not shown that Dr. McClane was willing or available to testify. In addition, resentencing counsel made the strategic decision to rely on live

testimony rather than reading Dr. Warriner's postconviction testimony into evidence. As the postconviction court found, that strategy decision was reasonable, especially in light of the lack of certainty regarding whether Dr. Warriner did, in fact, diagnose Orme with bipolar disorder. See Strickland, 466 U.S. at 689. As Orme has not shown deficient performance, we find it unnecessary to discuss the prejudice prong. Id. at 697.

Orme also cannot demonstrate prejudice for counsel's failure to have Dr. Herkov testify concerning the statutory mitigating factors because the other defense expert, Dr. Maher, testified as to the mitigating circumstances, and the trial court found the existence of both statutory mental health mitigators and a third statutory mitigator. Moreover, resentencing counsel asked Dr. Herkov about the effect of cocaine upon one's ability to appreciate what one is doing or one's ability to avoid doing it. Lastly, Dr. Herkov testified that cocaine intoxication causes impaired judgment, and he related Orme's bipolar disorder and drug use back to the crime. Orme cannot demonstrate prejudice as to this issue and therefore, is not entitled to relief under Strickland.

Orme's last allegation as to mitigation—that the expert testimony at resentencing could have been better presented—does not overcome the "highly deferential" judicial scrutiny under which attorney conduct is analyzed. Strickland, 466 U.S. at 689. More importantly, a "general allegation that

mitigating evidence could have been better presented is an insufficient allegation of prejudice." Cole v. State, 841 So. 2d 409, 428 (Fla. 2003). Orme argues that had the testimony been better presented, the experts would have had more credibility with the jury, resulting in a reasonable probability that Orme's bipolar disorder would have been established. However, this argument is purely speculative and does not entitle Orme to relief. Johnston v. State, 70 So. 3d 472, 477 (Fla. 2011) ("Mere speculation that counsel's error affected the outcome of the proceeding is insufficient.").

Orme has not demonstrated ineffective assistance as to this first claim. Therefore, we affirm the postconviction court's denial of relief. Because none of Orme's subclaims entitle him to relief, his claim of cumulative prejudice must also fail. Suggs v. State, 923 So. 2d 419, 433-34 (Fla. 2005) ("Because he failed to prove a deficiency in any one of the above alleged instances of ineffective assistance of counsel, Suggs' cumulative claim of prejudicial error also fails.").

### B. Improper Arguments

Most of the prosecutorial comments to which Orme objects were not improper. Thus, counsel cannot be ineffective for failing to object to them. Rogers v. State, 957 So. 2d 538, 548 (Fla. 2007). However, three of the prosecutor's arguments were improper, and Orme's resentencing phase counsel

should have objected.  Nonetheless, we deny relief because prejudice has not been demonstrated.

During closing argument, the prosecutor asked the jury to consider the last minutes of the victim's life: "Was she feeling any endorphins, was she feeling a sense of calm, or was she feeling deep sadness, fear, pain, cruelty, what does our common sense tell us?"  This comment asked jurors to use their common sense to think about what the victim was feeling.  As found by the postconviction court, this comment is an impermissible, "golden rule" argument—one that asks jurors to place themselves in the victim's position, imagine the victim's pain or fear, or imagine how they would feel if the victim was their relative.  See Williamson v. State, 994 So. 2d 1000, 1006 (Fla. 2008) (quoting Hutchinson v. State, 882 So. 2d 943, 954 (Fla. 2004)) (internal quotation marks omitted).

The other two comments were impermissible imaginary scripts.  "An 'imaginary script' is a subtle form of a 'golden rule' argument in which the prosecutor asks the jury to put the prosecutor's 'own imaginary words in the victim's mouth,' thereby 'trying to unduly create, arouse and inflame the sympathy, prejudice and passions of [the] jury to the detriment of the accused.' " Gonzalez v. State, 136 So. 3d 1125, 1153 (Fla.) (quoting Urbin v. State, 714 So. 2d 411, 421 (Fla. 1998)), cert. denied, 135 S. Ct. 193 (2014).  In the first comment, the prosecutor stated that the victim could not breathe and therefore, could not tell

Orme to "please take my car, go ahead, take the purse, you've already beaten me, you have already raped me, I have no dignity, don't take my life." Later on, the prosecutor stated that the victim "didn't beg him, please, Mike, let me go, you are hurting me." These two comments placed imaginary words into the victim's mouth and were therefore improper. However, Orme must demonstrate prejudice to prevail on this claim.

To establish prejudice for counsel's failure to object to improper prosecutorial comments, the prosecutor's comments must "either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than . . . it would have otherwise." Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (quoting Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)). Although the prosecutor in this case made impermissible golden rule and imaginary script arguments, these arguments do not rise to the level of prejudice required by Walls. The statements constituted a brief portion of an argument that otherwise focused on the facts of the case and the evidence against the defendant. None of the statements were so harmful or inflammatory as to influence the jury to reach a more severe verdict than it would have otherwise, especially in light of the evidence presented. Id. As such, we find that Orme has failed to demonstrate

prejudice and, therefore, cannot establish a claim of ineffective assistance for resentencing counsel's failure to object to these improper prosecutorial comments.

We take this opportunity to again caution prosecutors about such impassioned closing arguments. We understand that often comments are made in the heat of the moment that with hindsight should not be made because they cross the line from zealous advocacy to improper. However, prosecutors should be ever mindful that in cases where the evidence supporting guilt or the aggravating circumstances is not strong, such comments could and have caused this Court to find that improper comments materially contributed to either the finding of guilt or the recommendation for a sentence of death.

### C. Claims Regarding Voir Dire

Orme argues that resentencing counsel rendered ineffective assistance by not continuing to question prospective jurors on whether they could consider remorse or mercy in sentencing. As to prejudice, Orme asserts that when the errors committed by resentencing counsel are combined with the errors this Court found harmless on appeal, it is clear that Mr. Orme did not receive the fundamentally fair proceeding to which he is entitled under the Eighth and Fourteenth Amendments.

During voir dire, resentencing counsel asked prospective jurors if they could consider remorse as mitigation and whether mercy should be a consideration in sentencing. Orme III, 25 So. 3d at 543-44. As to each of these issues, the State

objected, and the trial court sustained the objections, restricting defense questions regarding these topics.  <u>Id.</u>  Upon reconsideration, the court allowed inquiry into remorse and mercy again, but resentencing counsel did not ask any other prospective jurors about remorse.  <u>Id.</u>  Counsel did, however, resume questioning about mercy.  <u>Id.</u>  The State also began to question the jurors about mercy, explaining that the consideration of mercy rests with the governor.  <u>Id.</u> at 544-45.  Resentencing counsel objected to that line of argument and explained that the defense would not be questioning any more jurors about mercy, so the State should not be allowed to mention it.  The trial court ruled that the State could not discuss mercy unless defense counsel brought it up.  <u>Id.</u> at 545.  Resentencing counsel then did not mention mercy for the rest of voir dire.  On appeal, we found Orme's claims of trial court error on these issues unpreserved because counsel did not ask jurors about remorse or mercy after the court made its rulings.  <u>Id.</u> at 543, 545.

Orme now argues ineffective assistance of counsel for failing to preserve these claims.  However, Orme cannot demonstrate deficient performance.  As to mercy, resentencing counsel made a strategic decision to abandon that line of questioning to prevent the State from further argument concerning the consideration of mercy.  Such decision was both sound and reasonable.  <u>Strickland</u>, 466 U.S. at 689.  Counsel relied on the prospective jurors to consider mercy on their own rather than suggesting that they consider it and thereby exposing them to

additional negative argument by the State. Furthermore, counsel's decision not to continue questioning prospective jurors about remorse and mercy does not fall below the range of reasonably competent performance because Orme is not entitled to have prospective jurors questioned about the specific topics of remorse and mercy. Orme cannot overcome the highly deferential judicial scrutiny to which counsel's behavior is entitled. Therefore, Orme is not entitled to relief under Strickland.

## II. Habeas Claims

Ineffective assistance of appellate counsel is determined using the Strickland standard for ineffective trial counsel. Walls, 926 So. 2d at 1175. Any appellate counsel deficiency must be related to an error affecting the outcome of the case, not an error that is harmless. Knight v. State, 394 So. 2d 997, 1001 (Fla. 1981). Appellate counsel's deficiency must have compromised the appellate process so much that confidence in the correctness of the result is undermined. Thompson v. State, 759 So. 2d 650, 660 (Fla. 2000). Appellate counsel will not be deemed ineffective for failing to raise a meritless issue. Wyatt v. State, 71 So. 3d 86, 112-13 (Fla. 2011). As such, appellate counsel cannot be ineffective for not raising unpreserved claims unless they constitute fundamental error. See Walls, 926 So. 2d at 1176; Davis v. State, 928 So. 2d 1089, 1133 (Fla. 2005). Further, appellate counsel is not required to raise every claim that might have had some possibility of

success, <u>Zack v. State</u>, 911 So. 2d 1190, 1204 (Fla. 2005), but must instead "winnow out weaker arguments in order to concentrate on key issues," <u>Thompson</u>, 759 So. 2d at 656 n.5.

## A. Use of Restraints

Orme claims appellate counsel was ineffective for failing to raise as an issue on direct appeal the use of a restraint during his resentencing. Generally, a defendant has the right to appear before the jury free from physical restraints. <u>Weaver v. State</u>, 894 So. 2d 178, 193 (Fla. 2004). However, restraints may be used to allay security concerns, such as preventing courtroom violence or an escape, as well as preventing other courtroom disruptions. <u>Deck v. Missouri</u>, 544 U.S. 622, 633 (2005). Orme's habeas petition and reply to the State's response contain speculative and conclusory allegations of prejudice which were not argued before the trial court.

Prior to jury selection at the resentencing proceeding, the trial judge began a discussion about the need for security measures. The State reminded the trial judge of the need to have a hearing on the matter. During the hearing, personnel from the Bay County Sheriff's Office testified on this issue and requested the use of both a stun belt and a Brady brace. The sheriff's office provided generalized reasons for requesting the restraints based on the fact that this was the resentencing of a defendant who had been convicted of first-degree murder. Resentencing

counsel questioned a witness on the issue of whether the use of a stun belt changes the defendant's demeanor in the courtroom because the belt might be activated. The officer answered that the purpose of the stun belt was to make defendants aware that there is a method in place to deal with outbursts and improper movements.

At the conclusion of the hearing, the trial judge determined that a restraint should be used but not two restraints, and indicated that the stun belt should be used. The trial judge acknowledged that Orme had not been a security problem at earlier appearances before the court but that his case was now in a different posture. In essence, the court found that the defendant had been convicted of first-degree murder, that his conviction had been affirmed on appeal, that the case was now ready for resentencing, that this was the first time since his conviction that Orme was in a less restrictive environment, and that it was at this point that this defendant had more reason to possibly try an escape.

Even if the trial judge's articulation of the reasons for the restraint is not sufficiently specific, we find that such error would not require reversal because prejudice has not been demonstrated. See Smith v. State, 7 So. 3d 473, 493-94 (Fla. 2009); Elledge v. State, 408 So. 2d 1021, 1022-23 (Fla. 1982) (indicating that the critical issue to be determined in a restraint case is the degree of prejudice caused by using a restraint). In this case, resentencing counsel was concerned with

the fact that a stun belt could alter the defendant's demeanor in the courtroom. No argument was made that the use of the stun belt would interfere with his right to counsel or would prevent him from fully participating or communicating with counsel. Additionally, there is nothing in the record indicating that the stun belt was ever visible to the jury. See Weaver, 894 So. 2d at 195. Under these circumstances, we find the defendant is not entitled to relief on the merits of his claim. Therefore, it has not been demonstrated that appellate counsel was ineffective for failing to raise the issue on appeal.

## B. Access to Privileged Material

Orme next argues that appellate counsel was deficient for failing to raise the issue of the State being noticed of and allowed to participate in allegedly privileged discussions and communications because the trial court's refusal to hear his motions ex parte was erroneous.[10] Orme asserts that there was no justification for allowing the State to be involved in the preparation of Orme's defense and that the disclosure of these motions prejudiced him by revealing to the State information it

---

10. The State cites Jones v. State, 928 So. 2d 1178 (Fla. 2006), to argue that Orme's claim is procedurally barred because it should have been raised on appeal. Id. at 1182 n.5. However, that case involved a defendant using a postconviction motion to argue claims of trial court error that should have been raised on appeal. In contrast, Orme's claim is being raised in a habeas petition where the very act of failing to raise an issue on appeal is the basis for the claim of ineffective assistance of appellate counsel. Thus, Orme's claim is not procedurally barred.

was not entitled to receive and from which it could deduce the defense strategy. However, Orme has not indicated any specific information within his motions that would have revealed any defense strategy, nor has he set forth any basis on which the trial court should have heard his motions ex parte.[11] In addition, Orme has not specifically stated what information the State learned to which it would not have already been entitled under Florida's liberal discovery rules. In a habeas petition, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Wyatt, 71 So. 3d at 112-13 (quoting Anderson v. State, 18 So. 3d 501, 520 (Fla. 2009)). This requirement is especially significant here, where the motions in question appear to be mostly innocuous: requesting DNA testing of items previously tested by the State and requesting that the court order payment of expert witness invoices by the JAC. Such vague, conclusory allegations are insufficient to warrant relief on a habeas claim. Bradley, 33 So. 3d at 685. As such, we deny relief as to Orme's second habeas claim.

## C. Prosecutorial Arguments

---

11. See Fla. Code Jud. Conduct, Canon 3(B)(7)(a) (stating that a "judge shall not initiate, permit, or consider ex parte communications" except where required "for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits").

In his final ineffective assistance of appellate counsel claim, Orme argues appellate counsel should have argued for reversal of his sentence based on allegedly improper comments during closing argument. Most of the comments to which Orme objects were proper and thus, would not be the basis for a successful argument on appeal. Additionally, resentencing phase counsel did not object to any of the comments; therefore, they are unpreserved and must constitute fundamental error to result in ineffective assistance of appellate counsel. Walls, 926 So. 2d at 1176. "In order for improper comments made in the closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence." Id. As discussed in his claim of ineffective assistance of resentencing counsel, Orme has not demonstrated that the comments here rose to such level. Thus, appellate counsel was not deficient for not raising this meritless issue, Wyatt, 71 So. 3d at 112-13, and counsel's failure to raise this claim does not undermine our confidence in the result of his appeal, Thompson, 759 So. 2d at 660. Therefore, we deny relief on this claim.

## CONCLUSION

Orme has failed to demonstrate ineffective assistance of resentencing phase counsel as to any of his claims. Accordingly, we affirm the postconviction court's denial of Orme's postconviction motion. Because Orme has not demonstrated

ineffective assistance of appellate counsel, we deny relief on the three claims raised in his habeas petition as well.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
CANADY, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Two Cases:

An Appeal from the Circuit Court in and for Bay County,
        Brantley Scott Clark, Jr., Judge - Case No. 031992CF000442XXAXMX
And an Original Proceeding – Habeas Corpus

Linda McDermott of McClain & McDermott, P.A., Estero, Florida,

        for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, and Patrick M. Delaney, Assistant Attorney General, Tallahassee, Florida,

        for Appellee/Respondent